HARRY MINASSIAN vs. OGDEN SUFFOLK DOWNS, INC.

Suffolk. May 5, 1987. — July 13, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Contract,* Release from liability, Waiver, Unconscionability, Indemnity. *Indemnity.*

A negligence action by the owner of thoroughbred race horses allegedly injured or killed in a fire at the defendant's stable was barred by certain "waivers or releases" purporting to relieve the defendant, the operator of a race track, from liability for the loss of or injury to horses occupying stalls at its stable, where the releases, which had been executed by the plaintiff's authorized agents before the fire, were not unfair or unconscionable, despite the fact that the defendant had presented them on a "take it or leave it" basis. [492-493]

CIVIL ACTION commenced in the Superior Court Department on August 5, 1982.

Motions for summary judgment were heard by *James P. McGuire*, J., and the matter was reported by him to the Appeals Court. The Supreme Judicial Court on its own initiative transferred the case.

*M. Eric Schoenberg* (*Anne Hoffman* with him) for the defendant.

*Thomas Arthur Hensley* for the plaintiff.

WILKINS, J. The plaintiff alleges that, due to the negligence of the defendant (Suffolk Downs), thoroughbred horses owned by him were killed or injured during a fire at the defendant's race track in East Boston.

A judge of the Superior Court has reported for appellate consideration his interlocutory orders denying the parties' cross motions for summary judgment as to the effect of "waivers or releases" executed before the fire on behalf of the plaintiff. The plaintiff does not deny that his authorized agents executed

documents purporting to relieve Suffolk Downs from liability for the loss of or injury to his horses, but he claims that the purported releases are unenforceable.[1]

We transferred the case here, and now decide that the agreements exculpating Suffolk Downs from liability for any harm to the plaintiff's horses due to Suffolk Downs's negligence bar this action based on alleged negligence.

We summarize the relevant facts to which the parties have agreed. The plaintiff owned horses which he raced at tracks on the East coast, including the track owned by Suffolk Downs. Suffolk Downs provides horse stalls for the use of horse owners. It requires each owner to file a registration statement and a stall space application in order to race and to stable a horse at the race track.

The registration statement, executed on behalf of the plaintiff in January, 1982, provides in part that the owner "releases Suffolk Downs from liability of every kind and character of loss, damage or injury to horses or other property said owner may have." This language appears immediately above the line for a signature and immediately below the words "NOTICE — READ CAREFULLY."

Suffolk Downs assigns stable space without charge to owners, provided that the horse assigned a stall is eligible to race and is not incapacitated. An owner submits the name of a horse, and Suffolk Downs assigns it a stall. An owner is not granted possession of a stall and may not substitute one horse for another in an assigned stall. Suffolk Downs maintains substantial control over the premises for security, safety, and maintenance purposes. The stall application agreement, executed by the plaintiff's son on his behalf in March, 1982, provides below the words "IMPORTANT — TERMS and CONDITIONS — READ CAREFULLY": "Suffolk Downs, its officers,

---

[1] The plaintiff moved for partial summary judgment on the ground that the purported releases of liability were unenforceable. Suffolk Downs moved for summary judgment. The judge filed no explanation for the denial of both motions. The issue is one of law on the stipulated record submitted to us. On the record before the judge, perhaps there was a dispute as to an issue of material fact warranting denial of both motions.

agents and employees, shall not be liable for any harm to or loss of property, including but not limited to horses, or for harm to any person or loss of life, that may arise from any cause either on its premises or arising out of the occupancy of its premises. The undersigned assumes full responsibility for such harm or loss. Horse owners should protect themselves by insurance."

Suffolk Downs will not stable a horse without an owner's (or trainer's) agreement to the "release" clauses in the registration statement and in the stall space application. The plaintiff's agents had the opportunity to read and review the two documents before signing them. Suffolk Downs made no representations about them. On July 24, 1982, three of the plaintiff's horses allegedly were killed and eight injured as a result of a stable fire at the race track.

These agreements are enforceable according to their terms against a claim of loss caused by Suffolk Downs's negligence. The agreements exculpating Suffolk Downs in advance are not unfair or unconscionable. Nothing was concealed in small print or otherwise. It is true that Suffolk Downs presented the documents on a "take it or leave it" basis, and, therefore, the plaintiff had no choice but to sign them if he wished to race a horse at Suffolk Downs.[2] Whether or not one views the agreements as contracts of adhesion, there is no reason to deny their enforcement. In a business context such as this, there is far less reason to designate such agreements as unconscionable than in the typical consumer transaction. See *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 294 (1980). Cf. *Hannon* v. *Original Gunite Aquatech Pools, Inc.*, 385 Mass. 813, 824-825 (1982) (agreement to arbitrate dispute, made by college-educated consumer familiar with contracts, not unconscionable).[3]

---

[2] In July, 1982, Suffolk Downs was the only thoroughbred race track in New England with a full-term meeting of nine months.

[3] In a consumer transaction (involving unauthorized use of a credit card), this court construed against the credit card issuer language in the credit card application form which might have exonerated the issuer from its negligence in permitting an unauthorized user of the credit card to charge various purchases. *Lechmere Tire & Sales Co.* v. *Burwick,* 360 Mass. 718, 721 (1972). The court held that the credit card arrangement did not relieve the issuer from its own negligence.

The allocation or risk by agreement is not contrary to public policy. See *Lee* v. *Allied Sports Assocs.*, 349 Mass. 544, 550 (1965). In this case, the agreements placing the risk on the owner and letting him insure his horses, or not, at values he was better able to determine than Suffolk Downs, were sensible business judgments. See *Rutter* v. *Arlington Park Jockey Club*, 510 F.2d 1065, 1068 (7th Cir. 1975) (Illinois law) (stall application language, relieving race track owner of liability for negligently caused fire, upheld). We see no duress or improper (or other) pressure on the plaintiff to accept the agreements. The plaintiff does not argue that he had no alternative but to race his horses at Suffolk Downs. Each release has some similarity to an agreement by one to indemnify another against the consequences of the other's negligence, a practice our courts have long found acceptable. See *Shea* v. *Bay State Gas Co.*, 383 Mass. 218, 223-224 (1981); *Clarke* v. *Ames*, 267 Mass. 44, 47 (1929); *Speers* v. *H.P. Hood, Inc.*, 22 Mass. App. Ct. 598, 600, 602 (1986).

The plaintiff argues that the indemnification provision in the stall agreement is unenforceable because no lease or other rental agreement may exonerate a landlord from liability for harm caused by the landlord's negligence. G. L. c. 186, § 15. The registration agreement, which plainly is not a rental agreement, alone frees Suffolk Downs from liability for its negligence. We add that the stall agreement is not a rental agreement within the meaning of § 15, and the release set forth in the stall agreement is also enforceable.

Suffolk Downs's motion for summary judgment should have been allowed because the affirmative defenses based on the releases signed on behalf of the plaintiff were a bar to recovery. The order denying Suffolk Downs's motion for summary judgment is vacated. Judgment for Suffolk Downs shall be entered accordingly.

*So ordered.*