416 Mass. 286 (1993)
620 N.E.2d 784
JEANNE S. CORMIER
vs.
CENTRAL MASSACHUSETTS CHAPTER OF THE NATIONAL SAFETY COUNCIL.
Supreme Judicial Court of Massachusetts, Worcester.
September 14, 1993.
October 14, 1993.
Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.
Jeffrey N. Roy for the plaintiff.
Maria Hickey Jacobson for the defendant.
GREANEY, J.
We transferred this case to this court on our own motion to decide whether a "motorcycle safety course waiver form" which the defendant required the plaintiff to sign before she could participate in a beginner motorcycle rider safety course given by the defendant barred the plaintiff from any recovery for injuries sustained by her. A judge of the Superior Court concluded that the plaintiff's execution of the form barred her claims and granted the defendant's motion for summary judgment. See Mass. R. Civ. P. 56 (b), *287 365 Mass. 824 (1974). We also conclude that the defendant was entitled to summary judgment and affirm the corrected judgment in its favor.
The following are the material facts. On September 10, 1989, the plaintiff sustained personal injuries as a result of an accident. On that day, the plaintiff was enrolled in a beginner motorcycle safety course conducted by the defendant. The plaintiff had enrolled in the course in response to an advertisement which indicated that she, a beginner with no experience operating a motorcycle, would be taught how to ride a motorcycle safely by certified instructors. On the first day of the class, September 9, 1989, the plaintiff was presented with, and signed, a "motorcycle safety course waiver form." The form stated that the plaintiff agreed to
"release the Central Mass Safety Council, its members, employees, agents, representatives and those governmental agencies and other organizations affiliated with this course from any and all liability, loss, damage, costs, claims and/or causes of action, including but not limited to all bodily injuries and property damage arising out of participation in the motorcycle training course referred to above, it being specifically understood that said program includes the operation and use by the undersigned participant and others of motorcycles."
The plaintiff was told that she could not participate in the course unless she signed the form. At the time she signed the release, the plaintiff believed that she was releasing the defendant from liability for any accidental injury that might occur, but not for any injury caused by the defendant's negligence.
On the second day of the course, the plaintiff was operating a motorcycle on a course that contained sharp corners marked by cones. The course was bordered by a fence, and there was an area of soft sand between the course and the fence. While attempting to negotiate a turn, the plaintiff could not straighten out the motorcycle, and she headed for *288 the fence on the side of the track. The motorcycle stopped in the soft sand at the edge of the track before the fence. When the plaintiff attempted to get off of the motorcycle, it fell on her, causing injuries to her left shoulder and arm. She claims that the defendant was negligent in failing to warn her of the dangers involved in riding a motorcycle, in providing an unsafe course, in having inadequate supervision, and in failing to meet the duty of care imposed on a common carrier.
We agree with the motion judge that the general release provisions in the waiver form executed by the plaintiff entitle the defendant to summary judgment under the standards governing a rule 56 motion. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976).
"In this Commonwealth a right which has not yet arisen may be made the subject of a covenant not to sue or may be released. MacFarlane's Case, 330 Mass. 573, 576 [1953], and cases cited. Further `[t]here is no rule of general application that a person cannot contract for exemption from liability for his own negligence and that of his agents and servants.' Clarke v. Ames, 267 Mass. 44, 47 [1929]. Thus [the defendant] could validly exempt itself from liability which it might subsequently incur as a result of its own negligence. Ortolano v. U-Dryvit Auto Rental Co. Inc. 296 Mass. 439 [1937]. Barrett v. Conragan, 302 Mass. 33 [1938]. Schell v. Ford Motor Co. 270 F.2d 384, 386 (1st Cir. [1959])." Lee v. Allied Sports Assocs., 349 Mass. 544, 550 (1965). While any doubts about the interpretation of the release must be resolved in the plaintiff's favor, see Lechmere Tire & Sales Co. v. Burwick, 360 Mass. 718, 721 (1972), the release here is unambiguous and comprehensive ("any and all liability, loss, damage, costs, claims and/or causes of action, including but not limited to all bodily injuries"). This language obviously is sufficient to bar a claim in negligence without specifically mentioning that word. There is nothing to show that the release was procured by deceit or fraud or under duress. Requiring the plaintiff to sign the release before taking the *289 course does not make the release unconscionable. The plaintiff's decision to take the course was voluntary.
We also reject the plaintiff's argument that the release should be declared void as against public policy. "The allocation [of] risk by agreement is not contrary to public policy." Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 493 (1987). An agreement, like the one before us, placing the risk of negligently caused injury on a person as a condition of that person's voluntary choice to engage in a potentially dangerous activity ordinarily contravenes no public policy of the Commonwealth. On the facts of this case, there is no persuasive reason to find a public policy violation simply because an inexperienced consumer is purchasing instructional services involving an activity which poses some degree of physical danger.[1]
The plaintiff had an opportunity to read the release[2] and is deemed to have understood it. Lee, supra at 551. Her subjective belief that the release did not encompass negligence, and her subjective intent not to release any claim for negligence, do not furnish a basis for avoiding the release on the ground of mistake.[3] Finally, there is no merit to the plaintiff's argument *290 that the defendant is a common carrier which cannot attempt to exempt itself from liability. A common carrier is one who "holds himself out as furnishing transportation to any and all members of the public who desire such services in so far as his facilities enable him to perform the service...." Mt. Tom Motor Line, Inc. v. McKesson & Robbins, Inc., 325 Mass. 45, 47-48 (1949). The defendant provides instruction in the use of motorcycles, not transportation services to the general public.[4]
The corrected judgment of October 29, 1992, is affirmed.
So ordered.
NOTES
[1] Gonsalves v. Commonwealth, 27 Mass. App. Ct. 606 (1989), relied on by the plaintiff, does not support her position. In Gonsalves, the court observed that exacting a release of liability for negligence from a public employee under a compulsion to enroll in certain training courses might offend public policy. Id. at 608. Gonsalves acknowledges that, "[a]s a general proposition, releases of liability for ordinary negligence are valid." Id. at 608 n. 2. The plaintiff was under no compulsion to take the course offered by the defendant.
[2] To the extent that she argues otherwise, her assertion is not supported by the record. The course instructor stated that on the first morning of the course, he distributed the waiver form to course participants and directed them to review and sign the form. The plaintiff admits that she signed the form, although she has no memory of doing so. She has not rebutted evidence produced by the defendant that she had an opportunity to read the form. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
[3] The plaintiff's claim of mutual mistake is based on an assertion that the defendant's executive director agreed during his deposition that the waiver form was not intended to absolve the Safety Council of its own negligence. The deposition testimony is not to this effect. The director denied what he perceived to be an assertion that the Council relied on the waivers to avoid the responsibility of supervising its employees or correcting their negligent conduct, if any. He plainly stated that the waivers were intended to protect the Council's resources.
[4] Lange v. Nelson-Ryan Flight Serv., Inc., 108 N.W.2d 428 (Minn. 1961), cited by the plaintiff on the "common carrier" issue, depends on the responsibility imposed by Federal regulation on the pilot in command of an aircraft. The decision has no relevance to a case involving instruction in the use of motorcycles.